## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TROY JONES** | : | **CONSOLIDATED CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 25-2260** |
| | : | |
| **MONTGOMERY COUNTY, JULAO** | : | |
| **ALGARIN, THOMAS BERGER,** | : | |
| **MARCY D'ORAZIO, MICHAEL** | : | |
| **GORDON, GARY HENDLER, NANCY** | : | |
| **WELMAN, MATT MONCAVO,** | : | |
| **WARDEN SEAN MCGEE, SEAN P.** | : | |
| **SMITH** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                          **July 22, 2025**

Troy Jones pleaded guilty to burglary in Montgomery County ten months ago. His lawyer negotiated a sentence which allowed Mr. Jones to stay out of jail but be supervised through a work release program with a GPS monitor so he could work as a home health aide for his mother. He allegedly violated the terms of work release less than two months later by making a stop not authorized by his defined program. The County revoked his work release and placed him in custody. He challenges his custody and plea in state court but also now pro se sues the United States, a variety of Pennsylvania state actors, and his former lawyers. He today challenges the constitutionality of the County's work release program and GPS monitoring program under the Fourth, Fifth, Eighth, and Fourteenth Amendments, asserts a civil rights claim against federal officials, and claims under the Federal Tort Claims Act against federal employees even though he does not plead a federal employee participated in his plea, work release, or present custody.

We granted Mr. Jones leave to proceed without paying filing fees requiring we must now screen his claims consistent with our Congressionally mandated screening obligations. He does

not plead plausible allegations. We dismiss many of Mr. Jones's claims with prejudice as amendment would be futile but allow him leave to timely file an amended Complaint against Pennsylvania state actors in this consolidated action if he can do so in good faith consistent with this Memorandum.

## I.    Alleged pro se facts

Cheltenham Township Police arrested Troy Jones in November 2023 for burglary.[1] Mr. Jones pleaded guilty to the charge in September 2024.[2] Montgomery County Judge Vetri Ferman sentenced Mr. Jones to probation, imposed conditions including compliance with Montgomery County and the Pennsylvania Board of Probation and Parole rules, regulations, and special conditions of supervision and electronic monitoring, and found Mr. Jones eligible for work release subject to the imposed conditions.[3]

The County's work release program permitted Mr. Jones to work as a home health aide caring for his ailing mother followed by two years of probation.[4] The Program also required Mr. Jones to wear a GPS ankle bracelet to monitor his location as a condition of his supervised work release.[5]

Mr. Jones reported to Montgomery County Correctional Facility to complete paperwork for the GPS monitoring system on October 15, 2024.[6] Mr. Jones alleges unidentified monitoring system administrative staff at the Facility harassed and threatened him.[7] Mr. Jones dropped off grandchildren at a family member's home for the Thanksgiving holiday six weeks later.[8]

Unidentified persons at an unidentified time notified Mr. Jones his decision to drop off grandchildren on Thanksgiving constituted unauthorized movement and he needed to turn himself in to the Facility.[9] Mr. Jones reported to the Facility at an unpleaded time where unidentified

Facility officials held him in segregated housing for twenty-five days.[10] Mr. Jones remains in custody at the Facility.

Montgomery County Public Defender John Pavloff represented Mr. Jones and moved for reinstatement of work release privileges on December 24, 2024.[11] Judge Vetri Ferman denied the motion after hearing.[12] Private counsel Laurie Jubelirer entered her appearance for Mr. Jones in March 2025 and withdrew as counsel in May 2025.[13]

Mr. Jones then moved pro se to withdraw his guilty plea and moved for early probation.[14] An unidentified Montgomery County judge granted the motion for parole filed on Mr. Jones's behalf by the Montgomery County Adult Probation Unit in early July 2025.[15] Mr. Jones again moved pro se to withdraw his guilty plea which remains pending in the Montgomery County Court of Common Pleas.[16]

### Mr. Jones filed three complaints in federal court challenging the County's revocation of work release.

Mr. Jones also filed three separate lawsuits here arising from the same facts and all challenging the revocation of his work release and imposition of GPS monitoring as a condition of his probation: *Jones v. Montgomery County, et al.*, No. 25-2260; *Jones v. United States, et al.*, No. 25-2727; and *Jones v. United States, et al.*, No. 25-2842. He filed the two actions against the United States and others on the same day. We consolidated all three actions last week as part of our screening obligations into the first filed *Jones v. Montgomery County, et al.*, No. 25-2260.[17]

### Jones v. Montgomery County, et al.

Mr. Jones first sued Montgomery County, unidentified "Montgomery County Employees," unidentified "Montgomery County Correction Facility Employees," and individuals Julao Algarin, Thomas Berger, Marcy D'Orazio, Michael Gordon, Gary Hendler, Sean McGee, Nancy Welman, Matt Moncavo, and Sean P. Smith.[18] Mr. Jones asserts claims under section 1983 and under *Bivens*

*v. Six Unknown Agents of Federal Bureau of Narcotics*.[19] Mr. Jones alleges the County's GPS ankle monitoring system constitutes an unlawful search and seizure in violation of the Fourth Amendment, cruel and unusual punishment in violation of the Eighth Amendment, violates due process guaranteed by the Fifth and Fourteenth Amendments, and the County's work release conditions directly violate the Constitution by penalizing him while at holiday gatherings and penalizes him as a home health aide required to provide physical care, grocery shopping, and running errands for an infirm person. Mr. Jones also alleges the County's GPS policies are "erratic." He alleges a detainer against him while wearing the ankle monitor violates his rights because he did not commit a new crime, he is being held against his will, and he has a right to "seek occupation" through the work release program he believes is impermissibly restricted by the GPS system in violation of due process. Mr. Jones seeks punitive and compensatory damages in the amount of $500,000 and immediate release from the Montgomery County Correctional Facility, arguing our failure to "review" his claim will result in "a fundamental miscarriage of justice or actual innocence."[20]

### *Jones v. United States, et al.*

Mr. Jones pro se filed a case three weeks later based on the same facts challenging the work release program and GPS monitoring. He then sued the United States and other County entities and a public defender under the Federal Tort Claims Act.[21] Mr. Jones alleges the United States has a constitutional duty to "protect the rights of individuals equally" and "to keep a person safe."[22] He alleges violations of the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments but does not allege facts to support how his rights guaranteed by the Constitution were violated. He alleges ineffective assistance of counsel by Public Defender John Pavloff for encouraging him to agree to a guilty plea in the underlying Montgomery County criminal case and by failing to appeal from

the conviction and ignoring his calls and emails.[23] Mr. Jones alleges unidentified "Montgomery County Correctional Facility GPS Monitoring Employees" and employees of the work release program failed to provide "significant exculpatory evidence of good cause shown as employment infraction would reflect movement for medical needs of the person in care of home health aid worker on the work release program [sic]."[24]  He does allege a fact or claim regarding Warden McGee, the Montgomery County Public Defender's Office, the Attorney General of Pennsylvania, and the District Attorney of Montgomery County. He again seeks immediate release from the Facility, an injunction "on policy of work release program to be changed immediately in a timely fashion as an infraction of movement while at work is irrational [sic]," $200,000 in damages, appointment of counsel, and to disbar Attorney Pavloff from the practice of law.[25]

### Jones v. United States, et al.

Mr. Jones filed a third complaint (on the same day as his second) this time suing the United States, the Facility, the Facility Warden, the Montgomery County District Attorney, and his privately retained attorney Laurie Jubelirer under the Federal Tort Claims Act and asserting the same alleged constitutional violations.[26] Mr. Jones complained about alleged ineffective assistance of Attorney Jubelirer. Mr. Jones seeks $100,000 in punitive and compensatory damages, an injunction "regarding work release program provisions and statutes for home health aid workers pertaining to unlawful movement and infraction as home health aid occupation [sic]," asks us to vacate or dismiss his conviction in the underlying Montgomery County criminal action, asks us to disbar Attorney Jubelirer from the practice of law, seeks appointment of counsel, and a default judgment against Defendants.

We granted Mr. Jones leave to proceed without paying the filing fees in all three cases. Congress requires us to screen his complaints consistent with our gatekeeping function of actions

by incarcerated persons who proceed without paying the filing fees. We consolidated his three complaints last week into the first filed action as his claims arise from the same conduct.

## II. Analysis

Congress requires we dismiss all or part of Mr. Jones's consolidated complaint if it is "frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief."[27] When considering whether to dismiss a complaint for failure to state a claim under section 1915(e)(2)(B), we apply the standard provision found in the Federal Rule of Civil Procedure 12(b)(6).[28] Mr. Jones must plead enough facts to state a claim for relief plausible on its face under Rule 12(b)(6).[29] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[30] While "[t]he plausibility standard is not akin to a 'probability requirement,' it does require the pleading to show 'more than a sheer possibility … a defendant has acted unlawfully.'"[31] A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient.[32] We are directed by our Court of Appeals to be "mindful of our obligation to liberally construe a pro se litigant's pleadings… particularly when the pro se litigant is imprisoned."[33] We are to "remain flexible" and "apply the relevant legal principle even when the complaint has failed to name it."[34] But "pro se litigants must allege sufficient facts in their complaints to support a claim" and "cannot flout procedural rules– they must abide by the same rules that apply to all other litigants."[35]

### A. We dismiss with prejudice all claims against the United States and all Defendants asserted under the Federal Tort Claims Act or a *Bivens* claim.

The United States is immune from suit except where Congress waived its immunity by statute.[36] We lack subject matter jurisdiction if Congress did not waive immunity.[37]

Congress through the Federal Tort Claims Act waived the sovereign immunity of the United States for certain torts committed by federal employees acting within the scope of their employment.[38] We have jurisdiction over claims where a plaintiff alleges six elements: (1) a claim against the United States; (2) for money damages; (3) for injury or loss of property, or personal injury or death; (4) caused by the negligent or wrongful act or omission of any employee of the federal government; (5) while acting within the scope of his office or employment; (6) under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.[39]

We have no such allegations here nor could we. Mr. Jones takes issue with actions by Montgomery County, the Facility, various Facility officials and employees, the Montgomery County District Attorney, the Montgomery County Public Defender, and a variety of other County officials and entities. He does not allege negligence or wrongful act or omission of a federal government employee acting within his or her scope of employment.

We also have no circumstance where the United States "would be liable" as "a private person" "in accordance with the law or place where the act or omission occurred."[40]  Mr. Jones's claim is not cognizable to the extent he asserts a constitutional tort claim under the Act. As a matter of law, Congress's language referring to the "law of the place where the act or omission occurred" means the law of the State, the source of substantive liability under the Act.[41] Federal law, not State law, provides the source of liability for the alleged deprivation of a federal constitutional right.[42] The United States "simply does not render itself liable under" the Act for constitutional tort claims.[43] Whatever constitutional tort claim Mr. Jones intends to assert, it is not cognizable under the Act.

Mr. Jones also appears to assert a *Bivens* claim. The Supreme Court in *Bivens* held there is an implied cause of action, even absent statutory authorization, to enforce a damages remedy to compensate persons injured by **federal** officers who violate the constitutional prohibition against unreasonable search and seizure under the Fourth Amendment.[44] In the years following its decision in *Bivens*, the Supreme Court applied its theory in two other contexts: a Fifth Amendment sex-discrimination claim brought by a congressional staffer against a Congressman and a claim for inadequate prison medical care under the Eighth Amendment's cruel and unusual punishment clause.[45] There are no other contexts in which *Bivens* applies.[46] To the extent Mr. Jones intends to assert a *Bivens* claim, it fails as a matter of fact and law. We have no federal actor here and the complained-of conduct does not fall within any of the Supreme Court's three tightly drawn contexts for the application of a *Bivens* claim.

We dismiss Mr. Jones's claims against the United States and all other Defendants asserted under the Federal Tort Claims Act and a *Bivens* theory with prejudice. We are directed by our Court of Appeals to allow leave to amend "in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility."[47] An amendment would be "futile" if it would fail to state a claim on which relief may be granted.[48] As explained, Mr. Jones cannot sue the United States under the theories he advances and there are no allegations of federal officials acting within the scope of their federal employment.

### B.  We dismiss the civil rights claims against state and county actors.

Mr. Jones asserts civil rights claims against a variety of Pennsylvania and Montgomery County entities and County officials and employees for alleged constitutional violations under 42 U.S.C. § 1983. Congress, through section 1983, imposes liability on a "person" who "subjects, or causes to be subjected" another person to a civil right violation.[49] To state a claim under section

1983, Mr. Jones must allege (1) a person acting under color of state law committed the complained-of conduct; and (2) the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.[50] The state actor must have "personal involvement in the alleged wrongs" through allegations of "personal direction or … actual knowledge and acquiescence."[51]

Mr. Jones's constitutional challenges are difficult to unravel. He appears to challenge the imposition of a GPS ankle monitoring device itself as a condition of his release and the GPS ankle monitor limits his ability to work as a caregiver for his mother because it restricts his ability to do errands for her. We are not convinced Mr. Jones's claims articulate a constitutional deprivation as currently pleaded.

The Supreme Court ten years ago held a state conducts a Fourth Amendment search "when it attaches a device to a person's body, without consent, for the purposes of tracking that individual's movements."[52] But the Fourth Amendment prohibits only unreasonable searches depending on the circumstances of the case.[53] Mr. Jones does not allege how the GPS monitoring system used by the Facility is unreasonable.

In addressing the Supreme Court's decision in *Grady*, our Court of Appeals explained it does "not accept as given" placement of an electronic monitor on a person and using it to track his location "always constitutes" a violative search and seizure.[54] In *Holland*, a New Jersey prosecutor charged Mr. Holland with assault and moved for pretrial detention. Mr. Holland and his attorney agreed to home detention and electronic monitoring in exchange for the prosecutor's withdrawal of a motion for pretrial detention. Mr. Holland then moved for an injunction challenging the conditions of his pretrial release (home detention and ankle monitor) as an unreasonable search in violation of the Fourth Amendment.

Our Court of Appeals disagreed with Mr. Holland. Distinguishing the Supreme Court's decision in *Grady*, our Court of Appeals concluded there is no binding authority holding consented-to tracking and consented-to home detention are a search and a seizure.[55] The court reasoned even assuming the tracking and home detention are a search and seizure and even if intrusive, Mr. Holland has a reduced privacy interest balanced against the State's interest in ensuring persons accused of crimes are available for trial and have a legitimate and compelling interest in preventing crime by arrestees.[56] A person who has been arrested on probable cause for a dangerous offense which may require detention before trial has a reduced expectation of privacy and freedom from police scrutiny.[57] The court rejected Mr. Holland's argument the conditions of pretrial release are unreasonable because the Fourth Amendment does not require the State to use the least intrusive means and found Mr. Holland unlikely to succeed on the merits of his Fourth Amendment challenge.[58]

Mr. Jones's allegations are similar to those made by Mr. Holland and rejected by our Court of Appeals. For example, Mr. Jones complains of the GPS monitoring condition is a "freakishly existing rule" and is "unfair."[59] But Mr. Jones consented to GPS monitoring as a condition of his work release. He may not like the condition, but he consented to it.

Mr. Jones's complaints suffer from other deficiencies even if we assumed he had a cognizable claim. Mr. Jones's claims asserted against Defendants (other than the United States) can be divided into five groups: (1) the Attorney General of Pennsylvania; (2) Montgomery County, the Montgomery County Correctional Facility, the Montgomery County District Attorney, and Montgomery County Public Defender; (3) individual defendants Algarin, Berger, D'Orazio, Gordon, Hendler, Welman, Moncavo, Smith, and Warden McGee, (4) unidentified "employees"

of Montgomery County and the Montgomery County Correctional Facility, and (5) Attorney

Pavloff and Jubelirer.

### 1. Claims against the Pennsylvania Office of Attorney General are barred by the Eleventh Amendment.

The Pennsylvania Office of the Attorney General is immune from money damages under

the Eleventh Amendment.[60] The Supreme Court interprets the Eleventh Amendment "to shield

States and certain State-affiliated entities from suits for damages in federal court."[61] "There is no

exception to Eleventh Amendment immunity for plaintiffs who bring state law claims against a

state."[62] The immunity extends to state agencies like Pennsylvania's Office of Attorney General

and its officials acting in their official capacity as "against the State itself."[63] A state may waive

its Eleventh Amendment immunity, but Pennsylvania's General Assembly did not waive its

immunity for claims under section 1983.[64]

Mr. Jones's claims against the Pennsylvania Attorney General seeking money damages are

barred by the Eleventh Amendment.

### 2. We dismiss claims against Montgomery County without a pleaded policy or custom causing constitutional harm and the Montgomery County Correctional Facility, the Montgomery County District Attorney, and Montgomery County Public Defender are not "persons" under section 1983.

Congress, through Section 1983, imposes liability on "every person" who deprives another

of his civil rights under color of state law. Montgomery County is a municipality subject to liability

as a "person" under section 1983.[65] But it cannot be liable for the unconstitutional acts of its

employees under a theory of respondeat superior.[66] The County can only be liable when an alleged

policy or custom caused a constitutional violation.[67]

The Montgomery County Correctional Facility is not a "person" under section 1983.[68] The

Montgomery County District Attorney's Office and the Montgomery County Public Defender's

Office are not "persons" subject to liability under section 1983.[69] We dismiss claims against the Facility, District Attorney's Office, and Public Defender's Office.

We dismiss Mr. Jones's claims against the County with leave to timely amend if he can allege a policy or custom causing his alleged constitutional harm. We dismiss claims against the Facility, the District Attorney's Office, and the Public Defender's Office with prejudice as not "persons" capable of being sued under section 1983.

### 3. We dismiss individual Defendants Algarin, Berger, D'Orazio, Gordon, Hendler, Welman, Moncavo, Smith, and Warden McGee without pleading personal involvement in the alleged constitutional harm.

Mr. Jones does not allege who state actors Algarin, Berger, D'Orazio, Gordon, Hendler, Welman, Moncavo, and Smith are and how they are involved in the alleged deprivation of his constitutional rights and how, if at all, they are state actors. We infer Warden McGee is the warden of the Facility.

Assuming the individual Defendants are state actors, Mr. Jones does not allege whether he sues these individuals in their official or individual capacities. To the extent he intends to sue state actors in their official capacities, those claims are dismissed.[70] Claims against the Facility's officers are claims against the Facility itself and the Facility, as explained, is not a person capable being sued for civil rights violations under section 1983.[71] We dismiss official capacity claims against the individual Defendants with prejudice.

If Mr. Jones intended to sue the individual Defendants in their individual capacities, he does not allege their personal involvement in the constitutional harm. Mr. Jones must allege personal involvement to state a claim against the Facility officials in their individual capacities.[72] Facility officials may not be held liable under section 1983 based only on a *respondeat superior* theory of liability.[73] Facility officials may only be liable where the incarcerated person alleges

12

facts to show personal involvement in the alleged misconduct, requiring particular "allegations of personal direction or of actual knowledge and acquiescence."[74]

Mr. Jones does not allege the personal involvement of these state actors. We allow Mr. Jones to timely amend his complaint to include allegations of personal involvement of the named individuals if he can do so in good faith.

### 4. We dismiss claims against unidentified "employees."

Mr. Jones asserts claims generally against unidentified "Montgomery County Employees" and "Montgomery County Correctional Facility Employees." We do not know in what capacity these employees are sued, the alleged unconstitutional conduct, or their personal involvement in the alleged unconstitutional conduct.

We dismiss claims against "employees" generally. Mr. Jones may not sue all employees of Montgomery County and all employees of the Facility simply because they are employed by the County or Facility.[75] Mr. Jones must specify which individuals were personally involved in the alleged violation of his rights. If Mr. Jones believes certain employees of the Facility or of Montgomery County violated his constitutional rights but does not know their names, he may identify these individuals as "John Doe" or "Jane Doe." We allow Mr. Jones leave to timely amend his complaint against John Doe and/or Jane Doe Facility and County employees alleging facts as to their personal involvement, personal direction or actual knowledge and acquiescence in the alleged constitutional violations.[76]

### 5. We dismiss Attorneys Pavloff and Jubelirer with prejudice.

Mr. Jones sues Attorney Pavloff, a Montgomery County Public Defender, under section 1983. Public Defenders are not state actors for purposes of a section 1983 claim when performing an attorney's traditional functions as counsel to a defendant in a criminal proceeding.[77] Mr. Jones

alleges ineffectiveness of Attorney Pavloff but such claims are not properly brought as a section 1983 claim.[78] Privately retained Attorney Jubelirer does not act under color of state law and is not a state actor.[79] We dismiss section 1983 claims against Attorneys Pavloff and Jubelirer with prejudice.

### C. We dismiss claims for injunctive and declaratory relief in the ongoing state criminal proceeding.

Mr. Jones requests injunctive and declaratory relief in the form of immediate release from the Facility, an injunction against the work release program of Montgomery County Court of Common Pleas, and an order vacating or dismissing the Commonwealth's criminal action against him currently pending in state court.[80]

The Supreme Court directed us over fifty years ago to abstain from deciding issues in a pending state criminal prosecution.[81] To promote comity between the national and state governments, the Supreme Court in *Younger* requires we abstain from deciding cases interfering with certain ongoing state proceedings.[82] The Supreme Court directs us to limit abstention under *Younger* to "three exceptional circumstances": (1) state criminal prosecutions; (2) civil enforcement proceedings; and (3) civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.[83] Mr. Jones's claims fall squarely within the first category. There is an ongoing state criminal prosecution against him in *Commonwealth v. Jones*, No. CP-46-CR-0000534-2024, where he moved earlier this month to withdraw his guilty plea and challenging the validity of his guilty plea.

Granting Mr. Jones's request for injunctive relief and releasing him from state detention would interfere with the ongoing criminal proceeding in the Montgomery County Court of Common Pleas. The Commonwealth's criminal action against Mr. Jones implicates the Commonwealth's interest in enforcing its criminal laws.[84] Mr. Jones may raise his constitutional

violation claims surrounding his arrest and detention in the ongoing criminal proceeding against him in Montgomery County.[85] We dismiss Mr. Jones's request for injunctive relief.

## III. Conclusion

We dismiss with prejudice all claims against the United States and all Defendants asserting claims under the Federal Tort Claims Act or a *Bivens* action. We dismiss with prejudice the Montgomery County Correctional Facility, the Montgomery County District Attorney, and Montgomery County Public Defender because they are not "persons" under section 1983. We dismiss with prejudice the Pennsylvania Office of the Attorney General as immune from money damages under the Eleventh Amendment. We dismiss with prejudice claims asserted against Attorney Pavloff and Attorney Jubelirer because they are not state actors for purposes of section 1983 claims. We dismiss with prejudice all claims against individual Defendants in their official capacities.

We dismiss claims without prejudice allowing Mr. Jones to amend his complaint to allege a *Monell* claim against Montgomery County,against the individually named Defendants in their individual capacities for their personal involvement in the alleged constitutional harm, and against John Doe and/or Jane Doe defendants who were personally involved in the alleged constitutional harm if Mr. Jones can do so in good faith and consistent with this Memorandum.

---

[1] We take judicial notice of the Montgomery County Court of Common Pleas docket in the underlying criminal action; *Commonwealth v. Troy Jones*, No. CP-46-CR-0000534-2024 (Mont. Cnty. Ct. of Common Pleas).

[2] *Id.* at 3.

[3] *Id.*

[4] *Jones v. Montgomery Cnty., et al.*, No. 25-2260, Complaint at ECF 1.

---

[5] *Id.* at ECF 1-1. Mr. Jones attached documents to his Complaint he signed and acknowledged, including the Montgomery County Correctional Facility's Global Positioning Satellite System ("GPS") Rules and Regulations, indicating his understanding of the rules, regulations, and possible consequences for failure to comply with the GPS requirements. *Id.*

[6] *Id.* at ECF 1.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Commonwealth v. Troy Jones*, No. CP-46-CR-0000534-2024, Docket at 10.

[12] *Id.* at 11.

[13] *Id.* at 13.

[14] *Id.* at 14.

[15] *Id.* at 15.

[16] *Id.* at 15-16.

[17] ECF 15.

[18] Mr. Jones purported to state class claims on behalf of persons who are subject to the County's GPS ankle monitor bracelets. Mr. Jones moved to amend his Complaint to drop the class claims. *Jones v. Montgomery Cnty.*, No. 25-2260 at ECF 4. We granted his motion (ECF 9) and Mr. Jones filed an amended Complaint using only the first page of the form civil rights complaint omitting from the original Complaint Defendants Michael Gordon and Gary Hendler and adding as a defendant Sean P. Smith. ECF 13. The amended Complaint has no substantive allegations. *Id.* We consider all of his allegations as we liberally construe incarcerated persons' pro se complaints.

[19] 42 U.S.C. § 1983; 402 U.S. 388 (1971).

[20] *Jones v. Montgomery Cnty.*, No. 25-2260 at ECF 4. Mr. Jones's use of the phrase "fundamental miscarriage of justice" and "actual innocence" are legal terms used in the context of habeas petitions. We have no habeas petition before us nor do we see how we could as Mr. Jones's challenge to his sentence in the underlying criminal action remains pending in state court.

[21] *Jones v. United States, et al.*, No. 25-2727 at ECFs 2, 3.

---

[22] *Id.* at ECF 2.

[23] *Id.* at ECF 4.

[24] ECF 2.

[25] *Id.*

[26] *Jones v. United States, et al.*, No. 25-2842.

[27] 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). Congress also requires us to screen Mr. Jones's Complaint because he is incarcerated. *See* 28 U.S.C. § 1915A(a). Like section 1915(e)(2), we "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint – (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b).

[28] *Elansari v. Univ. of Pa.,* 779 F. App'x 1006, 1008 (3d Cir. 2019) (citing *Allah v. Seiverling,* 229 F.3d 220, 223 (3d Cir. 2000)). A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an

entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[29] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[30] *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[31] *Riboldi*, 781 F. App'x at 46 (quoting *Iqbal*, 556 U.S. at 678).

[32] *Id.*

[33] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (first quoting *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011); then citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)).

[34] *Yogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala*, 704 F.3d at 244). Under Rule 8(e), "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). We are directed by our Court of Appeals this liberal standard is "even more pronounced" where, as here, a plaintiff files a complaint pro se, without assistance of counsel, to "protect pro se litigants from the inadvertent forfeiture of important rights due merely to their lack of legal training." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (first quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); then citing *Higgs*, 655 F.3d at 339).

[35] *Id. at* 185 (quoting *Mala*, 704 F.3d at 245).

[36] *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (citing 28 U.S.C. § 1346).

[37] *Id.*

[38] *Brownback v. King*, 592 U.S. 209, 212 (2021).

[39] *Id.* (quoting *FDIC v. Meyer*, 510 U.S. 471, 475-76 (1994)).

[40] *Meyer*, 510 U.S. at 477.

[41] *Id.* at 478 (citations omitted).

[42] *Id.*

[43] *Id.*

[44] *Bivens*, 403 U.S. at 396-97.

[45] *Xi v. Haugen*, 68 F.4th 824, 832 (3d Cir. 2023).

[46] *Id.* at 832-33.

[47] *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citations omitted).

[48] *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citation omitted).

[49] 42 U.S.C. § 1983. Congress in section 1983 provides, in relevant part: "Every person who, under color of any statute … of any State …, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …." 42 U.S.C. § 1983.

[50] *Schneyder v. Smith,* 653 F.3d 313, 319 (3d Cir. 2011).

[51] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

[52] *Grady v. North Carolina*, 575 U.S. 306, 309 (2015).

[53] *Id.* at 310. The Court did not decide whether North Carolina's monitoring program is reasonable when properly viewed as a search because the state courts did not analyze the issue. *Id.*

[54] *Holland v. Rosen*, 895 F.3d 272, 301 (3d Cir. 2018).

[55] *Id.*

[56] *Id.* at 301-02.

[57] *Id.* at 302.

[58] *Id.*

[59] *See e.g., Jones v. United States, et al.,* No. 25-2727, ECF 2 at 2 (using the pagination assigned by the CM/ECF docketing system).

[60] The Eleventh Amendment "bar[s] all private suits against non-consenting States in federal court . . . with the goal of protecting 'the States' solvency and dignity.'" *Allen v. N.J. State Police*, 974 F.3d 497, 504 (3d Cir. 2020) (citations omitted).

[61] *Id.* at 505 (quoting *Bradley v. W. Chester Univ. of Pa. State Sys. of Higher Educ.*, 880 F.3d 643, 654 (3d Cir. 2018)).

[62] *Id.* (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)).

[63] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Mr. Jones did not sue Pennsylvania Attorney General Dave Sunday. Claims against Attorney General Sunday in his official capacity are barred by the Eleventh Amendment. Claims against Attorney General Sunday in his individual capacity do not state a claim because Mr. Jones does not allege personal involvement in the alleged civil rights violations. *Addlespurger v. Corbett*, 461 F. App'x 82, 86 (3d Cir. 2012). Even if Mr.

Jones could allege facts supporting Attorney General Sunday's personal involvement—and we cannot see a basis for his personal involvement—Attorney General Sunday is absolutely immune from money damages for conduct taken in the scope of his duties as the prosecutor for the State. *Stafford v. Shapiro*, No. 20-2665, 2020 WL 3542331, at *3 and n. 6 (E.D. Pa. June 30, 2020) (collecting cases). While absolute immunity does not protect administrative or investigative actions unrelated to the initiation and conduct of judicial proceedings, we see no such allegations by Mr. Jones. *See Roberts v. Lau*, 90 F.4th 618, 624 (3d Cir. 2024).

[64] 52 PA. CONS. STAT. ANN. § 8521(b); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020).

[65] *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 237 (3d Cir. 2013).

[66] *Id.*; *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000).

[67] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *McTernan v. City of York, PA*, 564 F.3d 636, 657-58 (3d Cir. 2009).

[68] *Lenhart v. Pennsylvania*, 528 F. App'x 111, 114 (3d Cir. 2013) (per curiam) (affirming dismissal of claims against a county prison because the prison is not a person capable of being sued under section 1983) (citing *Will*, 491 U.S. at 71); *see also Mercer-Spencer v. Spencer*, No. 24-834, 2024 WL 1704702, at *2 (E.D. Pa. Apr. 19, 2024) (dismissing with prejudice claims against Berks County Jail System because it is not a "person" under section 1983) (collecting cases); *Regan v. Upper Darby Twp.*, No. 06-1686, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009) (a prison or correctional facility is not a "person" subject to suit under federal civil rights laws) (collecting cases).

[69] *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 148 (3d Cir. 1997) (County District Attorney's Office is not an entity for purposes of section 1983 liability); *Brown v. Pennsylvania, Wayne Cnty.*, No. 22-1506, 2023 WL 3376547, at *2 (3d Cir. May 11, 2023) (per curiam) (County's Public Defender's Office and District Attorney's Office are not "persons" within the meaning of section 1983).

[70] *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

[71] *Will*, 491 U.S. at 71; *Robinson v. Pa. Dep't of Corr.*, 851 F. App'x 289, 291 (3d Cir. 2021).

[72] *Dooley*, 957 F.3d at 374 (citing *Rode*, 845 F.2d at 1207).

[73] *Id.*

[74] *Id.*

[75] *Hay v. George Hill Corr. Facility,* 349 F. Supp. 3d 463, 466-67 (E.D. Pa. 2018).

[76] *Id.*

[77] *Vasquez v. Dwyer*, 377 F. App'x 225, 226 (3d Cir. 2010) (per curiam) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981)).

[78] *Eyajan v. Ashtabula Cnty. Public Defender*, No. 23-1363, 2023 WL 6805295, at *1 (3d Cir. Oct. 16, 2023) (per curiam) (citations omitted) (footnote omitted).

[79] *Gannaway v. Stroumbakis*, 842 F. App'x 725, 730 (3d Cir. 2021).

[80] Mr. Jones also asks us to "disbar" Attorneys Pavloff and Jubelirer in Pennsylvania. The Pennsylvania Supreme Court has exclusive power to supervise the conduct of attorneys admitted to the practice of law in the Commonwealth of Pennsylvania. Pa. R. Disc. 103, 201.

[81] *Younger v. Harris*, 401 U.S. 37 (1971).

[82] *Lui v. Comm'n, Adult Ent. of the State of De.*, 369 F.3d 319, 325–26 (3d Cir. 2004).

[83] *Sprint Commc'ns., Inc. v. Jacobs*, 571 U.S. 69, 78–82 (2013) (cleaned up).

[84] *Id*.

[85] *Id*.; *see also Jaffery v. Atl. Cnty. Prosecutor's Off.*, 695 F. App'x 38, 40–41 (3d Cir. 2017) (affirming dismissal of complaint on *Younger* abstention in an ongoing state criminal proceeding implicating important state interests in prosecuting criminal behavior, and state proceedings provide an opportunity to raise federal constitutional defenses to prosecution and, to the extent, defendant sought dismissal of charges against him in state court as a result of alleged constitutional violations, "such relief is only available through a writ of habeas corpus.") ).